IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TERESA L. NESTOR, individually,
and as Personal Representative
of the Estate of Kelly R. Nestor,
deceased, and as parent and next
friend for the benefit of her minor
Children, GJN, EPN and KDN, and
for the benefits of others,

        Plaintiff,

v.                  //   CIVIL ACTION NO. 1:11CV26
                             (Judge Keeley)

CENTURY STEEL ERECTORS, INC.,
a Non-Resident Corporation
incorporated under the Laws
of Pennsylvania,

        Defendant.

MEMORANDUM OPINION AND ORDER
DENYING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 66] AND DENYING
MOTION FOR LEAVE TO FILE SURREBUTTAL RESPONSE [DKT. NO. 74]

On May 23, 2012, the defendant, Century Steel Erectors, Inc. ("Century Steel"), filed a Motion for Summary Judgment, which is fully briefed. For the reasons that follow, the Court **DENIES** the motion (dkt. no. 66), as well as the plaintiff, Teresa L. Nestor's ("Nestor"), Motion for Leave to File a Surrebuttal Reponse (dkt. no. 74).

I.

A.

Nestor commenced this action against Century Steel to recover damages for the death of her husband, Kelly R. Nestor ("Mr. Nestor"), who died as a result of a fall at a construction site on

NESTOR v. CENTURY STEEL ERECTORS, INC.                    1:11CV26

MEMORANDUM OPINION AND ORDER

March 3, 2009. At the time, Century Steel was the subcontractor for ironwork in the construction of an addition to the Armed Forces Readiness Center at Camp Dawson in Kingwood, West Virginia ("the Kingwood project"). Century Steel hired several union ironworkers, including Mr. Nestor, to erect steel columns, beams, bar joists, and decking for the project. It designated its own employee, Darryl Beton ("Beton"), to served as foreman.

On the morning of March 3, 2009, Mr. Nestor was welding bar joists on a roof for the Kingwood project while seated on a beam approximately eighteen feet above the ground. The roof did not have guardrails or any other installed fall protection system. Although Mr. Nestor was wearing a personal safety harness, he was not "tied-off" or otherwise secured. For unknown reasons, Mr. Nestor fell from his seated position on the beam to the ground below. Beton, who was on the ground approximately thirty to forty feet away, did not see Mr. Nestor fall, but turned to find him on the ground and unconscious. (Dkt. No. 70-19). Mr. Nestor sustained serious injuries to his legs and back, and ultimately died from his injuries on April 9, 2009.

Approximately two weeks before Mr. Nestor's accident, on February 19, 2009, an Occupational Safety and Health Administration ("OSHA") inspector happened to drive past another Century Steel work site in Ambridge, Pennsylvania, where he observed ironworkers

2

NESTOR v. CENTURY STEEL ERECTORS, INC.                    1:11CV26

MEMORANDUM OPINION AND ORDER

working without fall protection. He videotaped the workers for approximately ten minutes and showed the footage to Century Steel management. As a result of the incident, OSHA cited Century Steel for violating a regulation that, in pertinent part, requires:

> [E]ach employee engaged in a steel erection activity who is on a walking/working surface with an unprotected side or edge more than 15 feet (4.6 m) above a lower level shall be protected from fall hazards by guardrail systems, safety net systems, personal fall arrest systems, positioning device systems, or fall restraint systems.

29 C.F.R. § 1926.760; (Dkt. No. 70-14).

In response to the OSHA citation, Century Steel's Safety Director, Dan Grove ("Grove"), issued a memorandum dated February 25, 2009 to all employees, including those at the Kingwood project, which discussed the incident at the Ambridge work site and reminded them of the seriousness of using fall protection. Grove's memorandum described the nature of the infraction and the consequences for such violations:

> Not only were the workers not tied off, they did not even have their harnesses on. There was no fall protection in place . . . .
>
> . . .
>
> The Foreman and Ironworkers that were not wearing their harnesses have been suspended until further notice. There are no written warnings or verbal warnings. You will be terminated from employment for <u>fall protection violations.</u>
>
> . . .

This is a serious matter, it's not a joke.

. . .

This inspection took place in the afternoon after lunch. But I'm sure that they did not know that in the morning at the Arena project, an Ironworker installing metal deck had slipped on some ice and fell into his harness. After climbing back up onto the steel he got a new harness and lanyard and returned back to work. This employee did his job correctly and lost no time or his life and went home at the end of the day.

Foreman [sic], it is your responsibility to make sure that your job sites are working in compliance with OSHA standards and Century Steel's safety policy.

(Dkt. No. 70-13) (emphasis in original).

The day after Grove issued this memorandum, Beton held a safety meeting at the Kingwood work site with the ironworker crew, including Mr. Nestor. During this meeting, he discussed Grove's memorandum and reiterated Century Steel's policy requiring employees to use full body harnesses and shock absorbing lanyards, in addition to other methods of fall protection, as circumstances warrant. See (Dkt. No. 70-11 at 3). Beton further informed the crew of the safety equipment that was available on site.

During this safety meeting, however, Beton also informed the crew that he was comfortable if the men moved about the beams using a method known as "cooning," in which a worker straddles a beam, placing a foot on the bottom flanges of either side of the beam. Importantly, cooning is not an acceptable method of fall protection

NESTOR v. CENTURY STEEL ERECTORS, INC.                    1:11CV26

MEMORANDUM OPINION AND ORDER

under either OSHA regulations or Century Steel's policy. See (Dkt.

Nos. 70-6 at 34-35; 70-12 at 11-14).

During his deposition, Beton recounted the substance of the

safety meeting:

> We read the memo, and basically the memo is telling [sic]
> we have to wear or [sic] harnesses and lanyards when
> you're on the building.
>
> We discussed building height. And I believe there was two
> areas of 18 foot 8 that were high. The lower part of the
> high roof was 17-9. A little bit of beam height puts our
> feet in the general area of 15 foot with the ground level
> being up and down, the two vaults. We'll just move around
> on the building cooning, cooning the beams. I don't want
> to see any walking on the top beams, walking up on top of
> the beams. And we'll just move around, we'll just crawl
> around on this building in a nice orderly fashion.

(Dkt. No. 67-1 at 8).

Following the safety meeting, Beton memorialized his

discussion with the Kingwood project crew in a handwritten

memorandum:

> Thursday, Feb. 26, 2009. Held safety meeting after lunch
> at 12:30 P.M. I read the memo of OSHA insp. at Ambridge
> High School. . . . After reading we talked about wearing
> our harnesses. I informed them that I have 3/8" cable
> available to run static lines, 3/8" chokers, retractable
> beamers to use to tie-off with. I'm comfortable that the
> upper roof is 18' if we crawl around on bottom flange
> (cooning). We all agreed, and they said it would be ok.

(Dkt. No. 70-17).

Beton and the other ironworkers in his crew generally agree

that, although they knew it was not an authorized method of fall

5

NESTOR v. CENTURY STEEL ERECTORS, INC.                    1:11CV26

MEMORANDUM OPINION AND ORDER

protection, cooning was a common practice among ironworkers, and they felt comfortable with the practice. Id.; (Dkt. Nos. 67-3 at 6; 67-4 at 7). None of the crew, including Mr. Nestor, had previously complained about a lack of safety equipment or that they felt unsafe working on the Kingwood project. (Dkt. No. 67-3 at 5). Beton did not require them to use this equipment or to tie-off their safety harnesses, and the foreman himself never used fall protection. (Dkt. Nos. 70-22 at 7; 70-23 at 2; 70-24 at 2).

Beton denies that he authorized cooning as an alternative to using fall protection, or that he ever directed anyone to work without fall protection (dkt. no. 70-12 at 14). He concedes, however, that during the time between the February 26, 2009 safety meeting and Mr. Nestor's fall on March 3rd, neither he nor any of his crew tied-off while working. (Id. at 15-16). He also admits that he was aware of this fact and took no action to compel his workers to tie-off. Id.

Following Mr. Nestor's fall, OSHA investigated the accident and issued two citations against Century Steel:

29 C.F.R. § 1926.20(b)(2): The employer did not initiate and maintain programs which provided for frequent and regular inspections of the job site, materials and equipment to be made by a designated competent persons(s):

(a) Armed Forces Readiness Center addition, Kingwood, WV: Employees spacing and connecting open web joists were exposed to hazards such

6

NESTOR v. CENTURY STEEL ERECTORS, INC.                    1:11CV26

MEMORANDUM OPINION AND ORDER

as but not limited to falls over 15 feet. The
competent person did not know the height the
employees were working at[1] and did not make
frequent and regular inspections of the job
site to ensure fall protection was utilized
when working over 15 feet, as determined on
04/13/09.

29 C.F.R. § 1926.760(b)(3): Each employee engaged in a
steel erection activity who is on a walking/working
surface with an unprotected side or edge more than 15
feet (4.6 m) above a lower level were not protected from
fall hazards by guardrail systems, safety net systems,
personal fall arrest systems, positioning device systems
or fall restraint systems:

(a) Armed Forces Readiness Center addition,
Kingwood, WV: Employees were exposed to a fall
of greater than 15 feet while performing work
on top of roof beams. An employee was not
protected from falling by the use of guardrail
systems, safety net systems, or personal fall
arrest systems and fell approximately 18 feet
to the ground, as determined on 04/13/09.

(Dkt. No. 70-8 at 7, 8).

In response, Century Steel suspended Beton for one week for failing

to enforce the company's policy requiring employees to use safety

harnesses and lanyards. (Dkt. Nos. 9 at 4; 18 at 3).

**B.**

On February 25, 2011, Nestor, individually, as personal

representative of the Estate of Kelly R. Nestor, and as parent and

---

[1] Beton apparently informed the OSHA inspector that he was not aware
Mr. Nestor had been working above fifteen feet. See (Dkt. No. 70-8 at
26). The plaintiff disputes that fact and cites to evidence in the record
that indicates Benton was aware Mr. Nestor was working at a height of
approximately eighteen feet.

NESTOR v. CENTURY STEEL ERECTORS, INC.                    1:11CV26

MEMORANDUM OPINION AND ORDER

next friend of G.J., E.P. and K.D., filed this action against Century Steel in the Circuit Court of Preston County, West Virginia. She asserts a deliberate intent claim pursuant to W. Va. Code § 23-4-2(d)(ii) and seeks damages for Mr. Nestor's wrongful death pursuant to W. Va. Code § 55-7-6(b). (Dkt. No. 4-1).

On March 10, 2011, pursuant to 28 U.S.C. §§ 1331 and 1441, Century Steel timely removed the case to this Court. Following the close of discovery, on May 23, 2012 it filed a Motion for Summary Judgment, which argues that Nestor cannot establish all of the elements required to prove a deliberate intent claim. (Dkt. No. 66). That motion is now fully briefed and ripe for review.[2]

## II.

### A.

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[2] The plaintiff also filed a Motion for Leave to File a Surrebuttal Response, arguing that the defendant cited to evidence in its reply that it had not included with its motion. (Dkt. No. 74). As discussed later, the Court denies that motion.

8

NESTOR v. CENTURY STEEL ERECTORS, INC.                    1:11CV26

MEMORANDUM OPINION AND ORDER

party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).
The moving party has the burden of showing "that there is an
absence of evidence to support the nonmoving party's case." Celotex
Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies
this burden, then the nonmovant must set forth specific facts as
would be admissible in evidence that demonstrate the existence of
a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at
322-23. Even if there is no dispute as to the evidentiary facts,
however, summary judgment is not appropriate where the ultimate
factual conclusions are in dispute. Overstreet v. Ky. Cent. Life
Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

In applying the standard for summary judgment, the Court must
review all the evidence "in the light most favorable to the
nonmoving party." Celotex, 477 U.S. at 322-23. The Court must avoid
weighing the evidence or determining the truth and limit its
inquiry solely to a determination of whether genuine issues of
triable fact exist. Anderson, 477 U.S. at 248.

**B.**

The West Virginia's Workers' Compensation Act generally
immunizes covered employers from employee suits for "damages at
common law or by statute" resulting from work-related injuries. W.
Va. Code § 23-2-6. An employer loses this immunity, however, when
it acts with "deliberate intention," id. § 23-4-2(d)(2), and an

9

NESTOR v. CENTURY STEEL ERECTORS, INC.                    1:11CV26

MEMORANDUM OPINION AND ORDER

employee may file an action for damages in excess of workers'
compensation benefits. Id. § 23-4-2(c).

Subsections (d)(2)(i) and (d)(2)(ii) of § 23-4-2 provide two
distinct methods of proof by which a plaintiff may establish that
an employer acted with "deliberate intention." Here, the plaintiff
has asserted her claim pursuant to subsection (d)(2)(ii). Under
that provision, employer immunity is lost if the plaintiff proves
each of the following five elements:

> (A) That a specific unsafe working condition existed in the
> workplace which presented a high degree of risk and a strong
> probability of serious injury or death;
>
> (B) That the employer, prior to the injury, had actual
> knowledge of the existence of the specific unsafe working
> condition and of the high degree of risk and the strong
> probability of serious injury or death presented by the
> specific unsafe working condition;
>
> (C) That the specific unsafe working condition was a violation
> of a state or federal safety statute, rule or regulation,
> whether cited or not, or of a commonly accepted and well-known
> safety standard within the industry or business of the
> employer, as demonstrated by competent evidence of written
> standards or guidelines which reflect a consensus safety
> standard in the industry or business, which statute, rule,
> regulation or standard was specifically applicable to the
> particular work and working condition involved, as contrasted
> with a statute, rule, regulation or standard generally
> requiring safe workplaces, equipment or working conditions;
>
> (D) That notwithstanding the existence of the facts set forth
> in subparagraphs (A) through (C), inclusive, of this
> paragraph, the employer nevertheless intentionally thereafter
> exposed an employee to the specific unsafe working condition;
> and

NESTOR v. CENTURY STEEL ERECTORS, INC.                    1:11CV26

> (E) That the employee exposed suffered serious compensable
> injury or compensable death as defined in section one, article
> four, chapter twenty-three whether a claim for benefits under
> this chapter is filed or not as a direct and proximate result
> of the specific unsafe working condition.

W. Va. Code. § 23-4-2(d)(2)(ii).

The deliberate intent statute expressly directs that "the court shall dismiss the action upon a motion for summary judgment if it finds . . . that one or more of the facts required to be proved by the provisions of subparagraphs (A) through (E), inclusive, paragraph (ii) of this subdivision do not exist." Id. § 23-4-2(d)(2)(ii)(B). "'Thus, in order to withstand a motion for summary judgment, a plaintiff must make a prima facie showing of dispute on each of the five factors.'" Marcus v. Holley, 618 S.E.2d 517, 529 (W. Va. 2005) (quoting Mumaw v. U.S. Silica Co., 511 S.E.2d 117, 120 (W. Va. 1998).

### III.

Century Steel argues that the plaintiff cannot establish the prima facie elements of the second and fourth of these requirements: that the employer had "actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death;" and that the employer "nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition." W. Va. Code § 23-4-2(d)(2)(ii)(B), (D). Nestor contends

11

NESTOR v. CENTURY STEEL ERECTORS, INC.                    1:11CV26

MEMORANDUM OPINION AND ORDER

that genuine issues of material fact exist that preclude summary judgment as to both issues.

The defendant does not dispute the plaintiff's ability to establish the three remaining elements of § 23-4-2(d)(2)(ii). However, because the facts underlying these elements are relevant, they warrant brief discussion. Nestor contends that she has established the first requirement because working in the absence of fall protection at a height of approximately eighteen feet created "a specific unsafe working condition . . . which presented a high degree of risk and a strong probability of serious injury or death." See id. § 23-4-2(d)(2)(ii)(A). She further contends that the two OSHA citations issued to Century Steel following the accident satisfy the third requirement, that "the specific unsafe working condition was a violation of a state or federal safety statute." See id. § 23-4-2(d)(2)(ii)(C). Finally, the plaintiff asserts that Mr. Nestor's death was the "direct and proximate result" of his exposure to the specific unsafe working condition. See id. § 23-4-2(d)(2)(ii)(E).

### A.

### 1.

Century Steel first argues that Nestor cannot establish the "actual knowledge" requirement in subsection (B), which requires that an employer must know of both the specific unsafe working

12

NESTOR v. CENTURY STEEL ERECTORS, INC.                1:11CV26

MEMORANDUM OPINION AND ORDER

condition and that it presents a "high degree of risk and the strong probability of serious injury or death." See id. § 23-4-2(d)(2)(ii)(B). The West Virginia Supreme Court of Appeals has described the "actual knowledge" standard as "a high threshold that cannot be successfully met by speculation or conjecture." Mumaw, 511 S.E.2d at 123. Moreover, "[t]his requirement is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition." Id. "Instead, it must be shown that the employer actually possessed such knowledge." Id.

"[T]he type of evidence presented to establish the requisite subjective knowledge on the part of the employer often has been presented as evidence of prior injuries or of prior complaints to the employer regarding the unsafe working condition." Ryan v. Clonch Indus., 639 S.E.2d 756, 765 (W. Va. 2006). Cases addressing the "actual knowledge" requirement have considered several factors, including:

> (1) whether any prior injuries had occurred because of
> the condition; (2) whether the employer previously had
> been cited by government officials for the violation; and
> (3) whether there had been any prior complaints that
> would have put the employer on notice of the high degree
> of risk and strong probability of serious injury or death
> created by the condition.

13

NESTOR v. CENTURY STEEL ERECTORS, INC.                1:11CV26

MEMORANDUM OPINION AND ORDER

Baisden v. Omega Coal Co., No. 2:11-079, 2012 WL 259949, at *9
(S.D.W. Va. Jan. 27, 2012) (Copenhaver, J.) (citing Blevins, 408
S.E.2d at 391-93). Evidence of prior similar incidents or
complaints, however, is not mandated by § 23-4-2(d)(2)(ii). Syl.
Pt. 2, Nutter v. Owens-Illinois, Inc., 550 S.E.2d 398, 399 (W. Va.
2001).

**2.**

     Century Steel asserts it did not have actual knowledge of
either the specific unsafe working condition or the strong
probability of serious injury or death. In its view, Mr. Nestor
created the unsafe condition himself by failing to use fall
protection available to him, and Century Steel, therefore, could
not have had actual knowledge of its existence. It argues that the
facts in this case closely resemble the facts in Mumaw, in which
the West Virginia Supreme Court of Appeals held that a deliberate
intent action cannot be maintained "where an employee creates a
specific unsafe working condition by not following expected
procedures." See 511 S.E.2d at 123 (citing Blevins v. Beckley
Magnetite, Inc., 408 S.E.2d 385, 391 (W. Va. 1991)).

     In Mumaw, an employee died after falling through a trap door
that he had failed to close, despite having been instructed three
times to do so. Id. The court concluded that Mumaw, rather than his
employer, created the specific unsafe working condition, and,

14

NESTOR v. CENTURY STEEL ERECTORS, INC.                    1:11CV26

MEMORANDUM OPINION AND ORDER

therefore, the plaintiff could not sustain a cause of action under § 23-4-2(d)(ii). Although Century Steel argues that Mr. Nestor similarly created the unsafe condition at issue here by failing to use fall protection in spite of company policy requiring him to do so, there are significant distinctions between this case and Mumaw.

While Mumaw's coworker explicitly instructed him three times to close the trap door and never suggested that it would be acceptable to work with it open, Beton's apparent acquiescence to the ironworkers' practice of not using fall protection contradicted Century Steel's written policy instructing employees to use it. See id. Additionally, in Mumaw, the evidence established that the employer believed all of its workers were complying with the applicable safety policies, and no agency had cited or warned the company about a safety violation. See id. Here, in contrast, only two weeks prior to the accident OSHA had cited Century Steel for the same violation that later resulted in Mr. Nestor's fall. Based upon this citation and Century Steel's internal memorandum discussing the incident, a reasonable juror could conclude that Century Steel recognized that its employees were working above fifteen feet without fall protection and that this presented a risk of serious injury or death.

Additionally, unlike the isolated incident in Mumaw, the evidence here suggests that the ironworkers at the Kingwood project

15

NESTOR v. CENTURY STEEL ERECTORS, INC.                    1:11CV26

MEMORANDUM OPINION AND ORDER

consistently worked without fall protection and that Beton not only
knew about it, but failed to use fall protection himself.  Evidence
that a company has a "general practice" of unsafe conduct can
support a finding that the employer had actual knowledge of the
condition. See Mayles v. Shoney's Inc., 405 S.E.2d 15, 21 (W. Va.
1990); cf. Baisden, 2012 WL 259949, at *11 (finding employer lacked
actual knowledge because there was no evidence that the unsafe
"practice was widespread, let alone encouraged–directly or tacitly–
by the defendant").

　　　Century Steel also argues that, even had it known Mr. Nestor
was working without fall protection, it lacked actual knowledge
that this condition presented a "high degree of risk and the strong
probability of serious injury or death." See W. Va. Code § 23-4-
2(d)(2)(ii)(B).  It suggests that, because Mr. Nestor was an
experienced ironworker who had never complained about safety
standards on the Kingwood project, he did not face a strong
probability of serious injury or death by working above fifteen
feet without fall protection.

　　　This argument belies both common sense and Century Steel's own
statements recognizing the risk contained in its internal
memorandum circulated two weeks prior to Mr. Nestor's fall.
Discussing OSHA citations for workers' failure to use fall
protection, Century Steel's memorandum aptly explained that such a

16

NESTOR v. CENTURY STEEL ERECTORS, INC.                    1:11CV26

MEMORANDUM OPINION AND ORDER

violation is a "serious matter," and one that could result in a loss of life. (Dkt. No. 70-13). Both OSHA and Century Steel require all ironworkers, regardless of experience, to wear fall protection to safeguard them from serious injury or death; thus, the contention that Mr. Nestor's experience level somehow immunized him from risk, is unavailing. This case presents facts from which a reasonable juror could infer that Century Steel had actual knowledge of a specific unsafe working condition that presented the strong probability of serious injury or death. See W. Va. Code § 23-4-2(d)(2)(ii)(B).

### B.

### 1.

Century Steel next contends that there is no evidence that it "intentionally exposed" Mr. Nestor to a specific unsafe working condition, as required by subsection (D). See id. § 23-4-2(d)(2)(ii)(D). To establish the fourth element of a deliberate intent action, there "must be some evidence that, with conscious awareness of the unsafe working condition . . ., an employee was directed to continue working in that same harmful environment." Tolley v. ACF Indus., Inc., 575 S.E.2d 158, 168 (W. Va. 2002). "In other words, this element, which is linked particularly with the [actual knowledge] element, is not satisfied if the exposure of the employee to the condition was inadvertent or merely negligent."

NESTOR v. CENTURY STEEL ERECTORS, INC.                    1:11CV26

<u>MEMORANDUM OPINION AND ORDER</u>

<u>Sias v. W-P Coal Co.</u>, 408 S.E.2d 321, 327 (W. Va. 1991). The employer need not specifically intend to injure the employee, but must intend to expose the employee to the actually known specific unsafe working condition. <u>Id.</u>

In <u>Tolley</u>, the West Virginia Supreme Court of Appeals discussed the type of evidence necessary to establish the "intentional exposure" element:

> In <u>Mayles</u>, we found sufficient evidence was introduced where "management at the restaurant knew how the employees were disposing of the grease, knew that a previous employee had been injured by such practice, had received employee complaints about the practice, and still took no action to remedy the situation." 405 S.E.2d at 23. Similarly, in <u>Sias</u>, we held that the requisite intentional exposure prong had been met where the plaintiff produced evidence that his coal employer directed him to work in an unsafe mining area despite having actual knowledge of the probability and risk of a coal outburst in that particular section of the mine. 408 S.E.2d at 327-28.

<u>Tolley</u>, 575 S.E.2d at 167-68. Conversely, West Virginia's highest court has rejected an employee's deliberate intent claim where there was no evidence that he "was ordered, directed, or even had it suggested to him" that he was to engage in the unsafe conduct. <u>Blevins</u>, 408 S.E.2d at 389. At bottom, "[t]he 'deliberate intention' exception to the Workers' Compensation system is meant to deter the malicious employer, not to punish the stupid one." <u>Deskins v. S.W. Jack Drilling Co.</u>, 600 S.E.2d 237, 243 (W. Va.

18

NESTOR v. CENTURY STEEL ERECTORS, INC.                    1:11CV26

MEMORANDUM OPINION AND ORDER

2004) (citing Helmick v. Potomac Edison Co., 406 S.E.2d 700, 705 (W. Va. 1991)).

### 2.

Century Steel argues that Beton never specifically directed Mr. Nestor to work without fall protection, and, therefore, the plaintiff cannot establish that Century Steel "intentionally exposed" Mr. Nestor to an unsafe condition. In the defendant's view, its conduct was, at worst, negligent because it instructed its workers to use fall protection and provided them with the necessary equipment; failing to enforce its safety policies does not evince an intention to direct Mr. Nestor not to use fall protection.

On summary judgment, all inferences must be drawn in favor of the nonmovant. Celotex, 477 U.S. at 322-23. Here, there are facts in the record from which a reasonable juror could conclude that Beton authorized, endorsed, or even directed the practice of cooning as an alternative to using fall protection. Moments after reviewing the company's safety policies with the Kingwood project crew, Beton nevertheless told them he was "comfortable" with the practice of cooning at a height of eighteen feet. (Dkt. No. 70-17). Beton admits he did not enforce the use of fall protection even after this meeting, and that he himself rarely used it. (Dkt. No. 70-12 at 15-16).

NESTOR v. CENTURY STEEL ERECTORS, INC.                    1:11CV26

MEMORANDUM OPINION AND ORDER

Although it is true that a deliberate intent claim is not intended to punish an employer who is merely negligent, Deskins, 600 S.E.2d at 243, a reasonable juror could infer from the facts of this case that Beton made a conscious decision not to remedy a known dangerous condition. See Mayles, 405 S.E.2d at 23. At bottom, Beton's intent is a disputed question of fact that must be determined by a jury based upon the evidence of his statements, actions, and failures to act. Therefore, because a reasonable jury could find that Century Steel intentionally exposed Mr. Nestor to an unsafe working condition, the plaintiff has made a prima facie showing of her deliberate intent claim. See W. Va. Code § 23-4-2(d)(2)(ii).

## IV.

The Court turns next to the plaintiff's Motion for Leave to File a Surrebuttal Response. Nestor argues that she is entitled to respond to deposition testimony that the defendant cited for the first time in its reply brief. A surreply is not warranted in this case, however. Even if the defendant did raise a new matter for the first time, the Court did not rely on the new material to reach a decision in this matter. Therefore, a surreply is "superflous and unnecessary." Suskso v. Cox Enters., Inc., No. 5:07CV144, 2008 WL 4279671, at *2 (N.D.W. Va. Sept. 16, 2008) (citing E.E.O.C. v. LA Weight Loss, 509 F. Supp. 2d 527, 540 (D. Md. 2007)).

20

**NESTOR v. CENTURY STEEL**                                    **1:11CV26**

<u>MEMORANDUM OPINION AND ORDER</u>

**V.**

In conclusion, the Court **DENIES** the defendant's Motion for Summary Judgment (dkt. no. 66), and **DENIES** the plaintiff's Motion for Leave to File a Surrebuttal Response (dkt. no. 74).

It is so **ORDERED.**

The Court directs the Clerk of Court to transmit copies of this Order to counsel of record.

DATED: September 4, 2012

                                   /s/ Irene M. Keeley
                                   IRENE M. KEELEY
                                   UNITED STATES DISTRICT JUDGE

21